**26-mj-1383-DLC**

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT

I, Zachariah Marino, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am employed as a Special Agent with the Internal Revenue Service-Criminal Investigation ("IRS-CI") and have been so employed since December of 2018. My duties as an IRS-CI Special Agent include the investigation of criminal violations of Internal Revenue laws and related statutes. From March 2019, through August 2019, I attended the Federal Law Enforcement Training Center in Glynco, Georgia where I received training in conducting criminal investigations and regarding IRS-CI policies and procedures. I also received training in the use of law enforcement techniques such as search and seizure warrants. During my career as a Special Agent, I have participated in the execution of numerous search and seizure warrants relating to various criminal violations. From August 2015 through December 2018, I was employed as a Financial Institution Specialist with the Federal Deposit Insurance Corporation. As a Financial Institution Specialist, I conducted bank examinations and other activities related to consumer protection and fair lending laws and regulations. I hold a bachelor's degree in accounting from the University of New Hampshire.

2. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C).

## PURPOSE OF AFFIDAVIT

3. I submit this affidavit in support of an application for criminal complaint against Brian A. DEPENA ("DEPENA") for violations of 18 U.S.C. §§ 1343 and 2 (wire fraud and aiding and abetting), and 18 U.S.C. §§ 1957 and 2 (money laundering and aiding and abetting) (the "TARGET OFFENSES"). As set forth below, there is probable cause to believe that

DEPENA committed the TARGET OFFENSES.

4. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested criminal complaint and does not set forth all my knowledge about this matter.

## SUMMARY OF PROBABLE CAUSE

5. DEPENA is a resident of Lawrence, Massachusetts.

6. DEPENA is the current Mayor of Lawrence, Massachusetts. DEPENA campaigned for Mayor in 2021 and was first elected in November 2021; he was reelected in November 2025. Prior to being elected Mayor, DEPENA was a member of the Lawrence City Council from January 2016 until November 2021.

7. In addition to holding political office, DEPENA also owns and operates a tire sales and automobile service business called Tenares Tire Service Inc. ("Tenares Tire") located at Lawrence. DEPENA incorporated Tenares Tire in Massachusetts in 2014.

8. The information set forth herein is derived from public records; information provided in response to subpoenas by entities and individuals, including without limitation financial institutions, the United States Small Business Administration and the Massachusetts Office of Campaign and Political Finance; and emails and texts messages obtained by legal process.

### The CARES Act

9. The United States Small Business Administration (the "SBA") is an agency of the executive branch of the United States government. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses

and by assisting in the economic recovery of communities after disasters. Among other things, the SBA was authorized to make loans to eligible small businesses located in a disaster area that suffered substantial economic injury as a result of the disaster. These were called Economic Injury Disaster Loans ("EIDLs").

10. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. The CARES Act and subsequent legislation allocated billions of dollars in EIDL funding and authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic.

11. CARES Act EIDLs had terms that were attractive to many small businesses, including a low interest rate (3.75%), a long repayment period (30 years), and a deferred first repayment date (usually twelve months after the date a borrower received their loan proceeds).

12. The maximum amount of a CARES Act EIDL was initially $150,000. In or about the week of April 6, 2021, the SBA increased the maximum to $500,000. On or about October 8, 2021, the SBA increased the maximum to $2,000,000.

13. A small business applying for a CARES Act EIDL was required to complete a loan application that requested information including, among other things, business name, owner name, number of employees, and gross revenues and cost of goods sold for the 12-month period ending January 31, 2020. The applicant did not request a specific loan amount; the SBA determined the amount based on the gross revenues and cost of goods sold identified on the application. The applicant signed the application with a digital signature and submitted it through the SBA's online portal.

14. The application required the applicant to certify that all information on their application, and any information submitted with their application, was "true and correct to the best of [their] knowledge," and that they would "submit truthful information in the future." The information provided by the borrower and the borrower's certification were material to the SBA's decision whether to approve the loan.

15. The SBA received EIDL applications and related documents electronically. All EIDL applications and related documents submitted before July 11, 2020, traveled through a server located in either Virginia, Iowa, or Washington state. All EIDL applications and related documents submitted on or after July 11, 2020, traveled through a server located in Iowa.

16. If the SBA approved the EIDL loan, it sent the borrower three documents electronically. The borrower had to sign these documents electronically and submit them to the SBA before the SBA disbursed any EIDL funds. The documents were:

a. a Loan Authorization and Agreement (the "LA&A"), which described the terms and conditions of the loan;

b. a promissory note (the "Note"), which stated the loan amount, the interest rate, and the repayment schedule; and

c. a Security Agreement, which gave the SBA a security interest in the borrower's property in case the borrower defaulted on the loan.

17. In the LA&A, the borrower certified that "[a]ll representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan." This certification was material to the SBA's decision whether to disburse the loan proceeds.

18. Upon receipt of a signed LA&A, Note, and Security Agreement, the SBA caused

EIDL proceeds to be electronically deposited into the borrower's bank account.

19. After a borrower received their loan proceeds, they could ask the SBA for one or more loan modifications for additional funds. The borrower did not complete another application; the SBA relied on the borrower's initial application, including the certification contained therein, when determining whether to approve the borrower's request for additional funds.

20. If the SBA approved the loan modification, the borrower was required to electronically sign an amended LA&A, amended Note, and amended Security Agreement. In each amended LA&A, the borrower again certified that "[a]ll representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan." This certification in each amended LA&A was material to the SBA's decision whether to disburse the additional EIDL funds.

21. A business receiving EIDL funds could only use EIDL funds to alleviate specific economic injury from the COVID-19 pandemic. Specifically, borrowers could only use EIDL funds for working capital necessary to carry the small business until resumption of normal operations and for expenditures necessary to alleviate the specific economic injury, and could not use EIDL funds for expansion of facilities or acquisition of fixed assets.

22. Before the SBA disbursed EIDL funds, EIDL borrowers were required to certify that the EIDL funds would be used only for working capital to alleviate economic injury caused by the COVID-19 pandemic. For example:

a. by signing the LA&A and any Amended LA&A, the borrower certified: "Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by [the] disaster occurring in the

month of January 31, 2020 and continuing thereafter . . . ."

b. by signing the Security Agreement and any Amended Security Agreement, the borrower certified: "Borrower certifies that . . . none of the [loan proceeds] are or will be primarily for personal, family or household purposes . . . ."

These certifications were material to the SBA's decision whether to disburse EIDL funds. As set forth above, the borrower had to sign the LA&A and the Security Agreement, and any Amended LA&A and Amended Security Agreement, electronically and submit them to the SBA before the SBA would disburse any EIDL funds.

*The Tenares Tire Initial EIDL Application*

23. According to SBA, email and other electronic records, on or around May 4, 2020, DEPENA caused an application for an EIDL for Tenares Tire to be electronically submitted with the SBA. Based on the initial application, the SBA approved an EIDL in the amount of $150,000 to Tenares Tire.

24. According to SBA, email and other electronic records, on or about June 17, 2020, DEPENA caused the electronic execution and submission of an LA&A, Note, and Security Agreement for an EIDL to Tenares Tire in the amount of $150,000.

25. On or about June 18, 2020, approximately $149,900[1] in EIDL funds were electronically deposited into Tenares Tire's Digital Federal Credit Union ("DCU") account no. -7823-2.

26. Based on bank records, it appears DEPENA used the majority of the funds from

[1] In some cases, the SBA deducted $100 from the loan amount as a processing fee.

the first EIDL distribution as working capital for Tenares Tire.

*The Tenares Tire First EIDL Modification*

27. By early 2021, DEPENA needed cash. In or around January 2020, DEPENA had purchased 342 Broadway in Lawrence ("342 Broadway") for $700,000:




28. According to subpoenaed records, to purchase 342 Broadway, DEPENA borrowed $525,000 at twelve percent (12%) interest from a hard money lender. The loan was a balloon note (the "Balloon Note"), payable in full in January 2021, and it was secured by a commercial mortgage, security agreement, and assignment of leases and rents against 342 Broadway, Tenares Tire, and other real property DEPENA owned in Lawrence.

29. In addition, DEPENA owed $375,000 to another hard money lender in connection with a June 2016 Promissory Note Modification Agreement (the "Promissory Note") secured by properties DEPENA owned at 272 Broadway, 73 Tremont Street and 95-97 Tremont Street, Lawrence. According to subpoenaed records, the interest rate under the Promissory Note was

eight percent (8%), and DEPENA was obligated to make monthly, interest-only payments of approximately $2,150.

30. According to records from financial institutions, starting at least as early as August 2020, DEPENA sought a conventional commercial real estate loan from various lenders to be used for, among other things, refinancing the Balloon Note and the Promissory Note. Evidence obtained from those financial institutions revealed that DEPENA was unable to obtain such financing in 2020 or 2021.

31. On or about February 9, 2021, DEPENA wrote an email to the Balloon Note lender requesting a six-month extension to give him time to obtain new financing to pay the Balloon Note:

> On 02/09/2021 11:33 PM Brian De Pena [redacted] wrote:
>
> Dear [redacted],
>
> I am writing to you to inform you about how I am still in the process of trying to obtain refinancing for the property on which you financed for me. I understand the loan was only for 1 year. At this time, I would like to see if you can please extend it by 6 months in order to give me ample time to obtain the new financing. The CoronaVirus pandemic has complicated things, but I have been succeeding on working my way towards completing the payment.

The lender responded on February 10, 2021, extending the Balloon Note maturity date to July 19, 2021, concluding, "I hope that works for you and you'll be able to refinance in that time."

32. According to IRS records, in addition to the Balloon Note and the Promissory Note, by in or around April 2021, DEPENA also had an outstanding federal income tax liability. DEPENA's personal tax debt was an impediment to his ability to obtain conventional financing.

33. According to SBA records, email and other electronic records, in or around April 2021, DEPENA caused a loan modification request to be submitted to increase the Tenares Tire EIDL.

34. On or about July 14, 2021, the SBA approved a modification to the Tenares Tire EIDL in the amount of $350,000, bringing the total loan amount to $500,000.[2]

35. As set forth above, the Balloon Note was due on or about July 19, 2021. On or about the dates set forth below, after the SBA approved the first Tenares Tire EIDL modification but before the amended documents were executed and before the funds were disbursed, DEPENA sent the following texts to his accountant and financial advisor, who had been assisting DEPENA with the EIDL application and modification:[3]

| | |
|---|---|
| July 22, 2021: | Brother, call me, I'm in trouble. I don't want to pressure you, but I don't have time to wait for this loan. I'm in your hands. 🙏 |
| July 25, 2021: | Brother, I need your help with this loan. I've been trying to reach you all week and haven't been able to get it resolved. I know I'm bothering you a lot, but I have no other option. Only you can give me what I need. 🙏🙏🙏🙏 |
| July 28, 2021: | Brother call me 🙏🙏🙏 |

36. According to SBA records, email and other electronic records, on or about August 12, 2021, DEPENA caused the electronic execution and submission of an Amended LA&A, 1st Amended Note, and Amended Security Agreement for an EIDL to Tenares Tire in the amount of $500,000. When the documents were executed on or about August 12, 2021, DEPENA caused the following false certifications:

---

[2] On or about June 3, 2021, a $10,000 Targeted EIDL Advance was deposited into Tenares Tire's DCU account no. -7823-2. This was funding that did not need to be repaid, similar to a grant.

[3] The texts referred to herein were originally in Spanish, and have been translated into English.

a. in the Amended LA&A, "Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by [the] disaster occurring in the month of January 31, 2020 and continuing thereafter . . . ."; and

b. in the Amended Security Agreement, "that . . . none of the [loan proceeds] are or will be primarily for personal, family or household purposes . . . ."

In truth, DEPENA did not intend to use the Tenares Tire EIDL funds solely as working capital to alleviate economic injury caused by the COVID-19 pandemic.

37. In the meantime, the Balloon Note lender had granted DEPENA an additional, unspecified extension of time within which to repay the Balloon Note.

38. On or about August 16, 2021, approximately $350,000 in EIDL funds were electronically deposited into Tenares Tire's DCU account no. -7823-2. The balance of the account prior to the deposit of the EIDL funds was approximately $20.23.

39. On or about August 26, 2021, DEPENA—the sole signatory on the account—made two payments to the IRS totaling $85,000 for his personal tax liabilities with the EIDL funds in the Tenares Tire DCU account no. -7823-2.

40. Bank records reflect that, in or around September 2021, DEPENA used approximately $90,000 traceable to the EIDL funds for his mayoral campaign. Specifically:

a. Between approximately August 16 and September 10, 2021, DEPENA transferred $20,000 (traceable to the EIDL funds) from the Tenares Tire DCU account no. -7823-2 his personal DCU account no. -1285-2; and on or about September 10, 2021, DEPENA caused to be deposited two

checks, each in the amount of $10,000, each payable to "C.T.E."[4] DEPENA, each containing the memo "Loan," and each drawn on DEPENA's personal DCU account no. -1285-2, into the Committee to Elect Brian DePena TD Bank checking account no. -7469;

b. On or about August 19, 2021, DEPENA transferred approximately $100,000 of the EIDL funds from the Tenares Tire DCU account no. -7823-2 to DEPENA's personal DCU account no. -1285-1. The balance in DEPENA's personal DCU account no. -1285-1 prior to the transfer was approximately $16.66. DEPENA then conducted the following transactions:

i. On or about September 14, 2021, after two checks totaling approximately $15,442 were overdrawn on the Committee to Elect Brian DePena TD Bank checking account no. -7469, DEPENA transferred $25,000 (traceable to the EIDL funds) from his personal DCU account no. -1285-1 to his personal DCU account no. -1285-2, used the funds to purchase a $25,000 Treasurer's Check payable to the "Campaign to Elect Brian A Depena," and caused the $25,000 Treasurer's Check to be deposited into the Committee to Elect Brian DePena TD Bank checking account no. -7469;

ii. On or about September 16, 2021, DEPENA transferred another

---

[4] *I.e.*, Committee to Elect.

$10,000 (traceable to the EIDL funds) from his personal DCU account no. -1285-1 to his personal DCU account no. -1285-2 and used the funds to purchase a $10,000 Treasurer's Check payable to "CTE Re Brian A Depena," which DEPENA caused to be deposited into the Committee to Elect Brian DePena TD Bank checking account no. -7469 on or about September 17, 2021;

iii. On or about October 20, 2021, DEPENA transferred another $25,000 (traceable to the EIDL funds) from his personal DCU account no. -1285-1 to his personal DCU account no. -1285-2, and then caused a check drawn on DEPENA's personal DCU account no. -1285-2 in the amount of $25,000, payable to "CTE Brian Depena" and containing the memo "Loan" to be deposited into the Committee to Elect Brian DePena TD Bank checking account no. -7469; and

iv. On or about October 27, 2021, DEPENA transferred another $22,000 (traceable to the EIDL funds) from his personal DCU account no. -1285-1 to his personal DCU account no. -1285-2, and then caused a check drawn on DEPENA's personal DCU account no. -1285-2 in the amount of $10,000, payable to "CTE Brian A. Depena" and containing the memo "Loan" to be deposited into the Committee to Elect Brian DePena TD Bank checking account no. -7469.

41. According to public records, when the Massachusetts Office of Campaign and

Political Finance ("OCPF") asked DEPENA to report the source of the September 10, 14, and 16, 2021, deposits to his campaign account described above by, he reported that the checks were "Candidate Loans" and "Funds Need It [sic] For The CTE Brian De Pena."

42. The SBA would not have approved an EIDL to Tenares Tire had it known that the funds were going to be used to make payments or loans to a campaign account. The SBA also would not have approved an EIDL to Tenares Tire had it known that the funds were going to be used to make payments towards outstanding personal tax liabilities.

*The Tenares Tire Second EIDL Modification*

43. Meanwhile, according to SBA, email and other electronic records, on or about October 20, 2021, DEPENA caused another loan modification request to be submitted to increase the Tenares Tire EIDL.

44. Also on or about October 20, 2021, DEPENA executed and caused to be submitted to the SBA a Resolution and Certification of Tenares Tire, stating that he was authorized to submit an application for an SBA loan in the amount of $1,654,400 on behalf of the company.

45. On or about October 27, 2021, the SBA approved a second modification to Tenares Tire's EIDL in the amount of $1,154,400, bringing the total loan amount to $1,654,400.

46. On or about October 27, 2021, according to SBA, email and other electronic records, DEPENA caused the electronic execution and submission of an Amended LA&A, 2nd Amended Note, and Amended Security Agreement for an EIDL to Tenares Tire in the amount of $1,654,400. When the documents were executed on or about October 27, 2021, DEPENA caused the following false certifications:

a. in the Amended LA&A, "Borrower will use all the proceeds of this Loan

solely as working capital to alleviate economic injury caused by [the] disaster occurring in the month of January 31, 2020 and continuing thereafter . . . ."; and

b. in the Amended Security Agreement, "that . . . none of the [loan proceeds] are or will be primarily for personal, family or household purposes . . . ."

In truth, DEPENA did not intend to use the Tenares Tire EIDL funds solely as working capital to alleviate economic injury caused by the COVID-19 pandemic.

47. On or around November 30, 2021, approximately $1,154,188 in EIDL funds were electronically deposited into Tenares Tire's DCU account no. -7823-2. The balance of the account prior to the deposit of the EIDL funds was approximately $2,128.

48. On or around November 30, 2021, DEPENA transferred approximately $1,156,316 (including all of the EIDL funds) from the Tenares Tire DCU account no. -7823-2 to DEPENA's personal DCU account no. -1285-2. The balance in the personal account prior to that transfer was approximately $1,401.56.

49. DEPENA then used $42,112.96 traceable to the EIDL funds for his mayoral campaign:

a. On or about November 30, 2021, DEPENA wrote a $10,000 check from his personal DCU account no. -1285-2 payable to "CTE Brian Depena," and caused it to be deposited into the Committee to Elect Brian DePena TD Bank checking account no. -7469 on or about December 2, 2021[5]; and

b. On or about January 11, 2022, DEPENA wrote a $32,112.96 check from

[5] The campaign account had been overdrawn for approximately twenty (20) days before the December 2, 2021, deposit.

his personal DCU account no. -1285-2 payable to "CTE Brian Depena," and caused it to be deposited into the Committee to Elect Brian DePena TD Bank checking account no. -7469 on or about January 11, 2022.

50. According to public records, when the OCPF asked DEPENA to report the source of the November 30, 2021 and January 11, 2022 deposits, he reported that they were "Candidate Loans" and "Funds Need It [sic] For The CTE Brian De Pena."

51. In addition, DEPENA used $883,293 traceable to the EIDL funds to pay off the high-interest loans secured by real properties he owned:

a. On or about December 9, 2021, DEPENA purchased a Treasurer's Check for $538,109.03 with the EIDL funds in his personal DCU account no. -1285-2, and used the check to pay off the Balloon Note; and

b. On or about December 18, 2021, DEPENA purchased a Treasurer's Check for $345,184.13 with the EIDL funds in his personal DCU account no. -1285-2, and used the check to pay off the Promissory Note.

52. The SBA would not have approved an EIDL to Tenares Tire had it known DEPENA intended to use the funds to pay off mortgages. These transactions would have been considered refinancings, and refinancing an existing loan was a prohibited use of EIDL funds.

53. As of August 5, 2026, DEPENA had made only sixteen (16) payments totaling approximately $130,160 towards the Tenares Tire EIDL; all of the payments were applied to interest accrued on the EIDL. The outstanding principal balance of the EIDL was approximately $1,654,420.

## CONCLUSION

54. Therefore, there is probable cause to believe that DEPENA committed violations of 18 U.S.C. §§ 1343 and 2 (wire fraud and aiding and abetting), and 18 U.S.C. §§ 1957 and 2 (money laundering and aiding and abetting).

Respectfully submitted,

DCC

Zachariah Marino

ZACHARIAH MARINO
Special Agent
Internal Revenue Service,
Criminal-Investigations

Signed electronically and sworn to telephonically in accordance with Federal Rule of Criminal Procedure 4.1 on August 13, 2026

HON. DONALD L. CABELL
UNITED STATES MAGISTRATE JUDGE
8/13/2026

UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS